**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

NATALIE DESPOSATI,
on behalf of herself and all others similarly situated,

Plaintiff,

v.

PINE HOSPITALITY, INC., d/b/a RACANELLI RESTAURANT GROUP, SPIGA NEW CANAAN GROUP, INC, GENNARO RACANELLI, and ALEX RACANELLI,

Defendants.

C.A. No. 3:25-cv-1896

## COLLECTIVE AND CLASS ACTION COMPLAINT

## I. INTRODUCTION

1. Plaintiff Natalie Desposati files this collective action and class action complaint against Defendants for violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), the Connecticut Minimum Wage Act, Conn. Gen. Stat. § 31-58 *et seq.* ("CMWA"), and Connecticut's Wage Payment and Collection Law ("CWPCL"), Conn. Gen. Stat. § 31-71a *et seq.* Plaintiff brings this action individually and on behalf of all similarly situated current and former employees of Defendants who worked as bartenders or servers, or both, and were paid a direct hourly wage of less than minimum wage during the past three years.

2. Defendants operate a multi-state restaurant group with locations throughout Connecticut and New York, including Lugano (Old Greenwich, CT), Molto (Fairfield and Darien, CT), Spiga (New Canaan, CT), Waveny Polo Bar and Grill (New Canaan, CT), Ecco (Trumbull, CT), Zucca Gastrobar (Westport, CT), Zaza Italian Gastrobar (Stamford, CT), and Pizza and Brew (White Plains, NY).

3. Plaintiff and similarly situated employees (collectively "class members" or "collective members") were employed as either bartenders or servers, or both, and were paid a direct wage of less than minimum wage (before accounting for any tips). Yet Defendants engaged in numerous acts and omissions to deprive class members of their wages and tips.

4. Defendants pay their bartenders and servers a direct hourly wage that is less than the minimum wage required by the FLSA and Connecticut law.

5. Indeed, Defendants systematically violated federal and Connecticut state wage and hour laws by engaging in a pattern and practice of wage and tip theft affecting all class members and collective members.

6. Even if Defendants offered a tip credit, Defendants failed to meet the strict requirements for doing so under federal or state law. Although Defendants have the burden to affirmatively prove compliance with all requirements for taking a tip credit,[1] the following are examples illustrating Defendants' inability to meet their burden of proof:

a) **Time Shaving and Tip Shaving:** Defendants consistently failed to pay class members for all hours worked. Defendants also systematically "shaved" tips by paying employees less than the full amount of the credit card tips they earned from customers.

b) **Inaccurate Tip Reporting:** Defendants inaccurately and systemically underreported what class members received in credit card tips while artificially inflating on their paychecks the amount reported as having been received as cash tips. By inflating class members' tip declarations and forcing employees to pay income taxes on phantom income they never received, resulting in reduced wages and tips because of increased tax withholdings (and/or liabilities), this systemic scheme impacted class members. This systemic practice occurred across locations, routinely, reflective of the systemic nature of the unlawful scheme.[2]

---

1 *See, e.g., Rodriguez v. Kaiaffa, LLC*, 337 Conn. 248, 284, 253 A.3d 13, 38 (2020) ("it is the employer's burden to establish that the employees qualified for the tip credit.") (collecting cases).

2 With the adoption of Public Act 22-134, the Connecticut legislature expressly provided for employees to bring private actions under subsection (d) of C.G.S. § 31-60 and §31-68, ***Connecticut's minimum wage law***, when employers fail to comply with strict regulations

c) **Paying Incorrect Hourly Pay Rates:** Defendants have routinely paid class members hourly rates not in compliance with the FLSA and Connecticut law. For example, Defendants have routinely paid class members an hourly rate of $6.38 per hour even when they performed substantial work and duties that are not part of an occupation that is customarily and regularly tipped or duties subject to the $8.23 per hour rate under Connecticut law covering bartenders, which is not only less than minimum wage but is also less than the hourly rate employers who comply with the tip credit are permitted to pay under the FLSA and Connecticut law for their job classifications ($8.23/hour under Connecticut law).[3]

d) **Tip Pool Violations:** Defendants required class members to turn over part of their tips to fund Defendants' tip pool. Yet Defendants cannot show that all tips from the tip pool were distributed to pay employees who were engaged in an occupation that is customarily and regularly tipped by customers. *See* generally *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 246 (2d Cir. 2011) (affirming Rule 23 class certification on tip pool violations claims under similar New York labor law rules where Defendants were alleged to have made "illegal deductions" from the tip pool)

e) **Improper Non-Service Work:** Defendants violated Connecticut's codified 80/20 Rule by requiring tipped employees to perform non-service duties for more than 20 percent of their shifts or more than two hours, whichever is less, without paying the full minimum wage for such time, in violation of Conn. Agency Reg. § 31-62-E3a and § 31-60-2. Similarly, Defendants violated the FLSA by taking a tip credit for class members notwithstanding Defendants' requirement that these individuals spend considerable time,

---

governing employees working in regularly tipped occupations. *See Anderson v. Reel Hosp., LLC*, 233 Conn. App. 618, 624, n. 13 (2025) (finding that "[t]he [Public Act 22-134] amendment, thus, now expressly provides for a private right of action."). This clarification by the Connecticut legislature comports with case law under the FLSA providing that if employers fail to provide with regulations governing tipping employees in customarily tipped occupations, they may not take a so-called "tip credit" and must pay at least the full minimum wage for all hours worked. *See*, e.g., *Chung v. New Silver Palace Rest., Inc.*, 246 F. Supp. 2d 220, 229 (S.D.N.Y. 2002) (under the FLSA rules and regulations employers must follow "to be eligible for the tip credit are strictly construed" and failure to comply with FLSA results in loss of any claimed tip credit). By amending Connecticut's minimum wage law to expressly provide a private right to sue for minimum wage violations due to tip regulation compliance failures, the legislature found that regulatory compliance failures resulted in minimum wage violations.

[3] Even if Defendants have purported to pay bartenders the $8.23 minimum wage for employers in full compliance with Connecticut tip credit statutes and regulations, Defendants in fact routinely paid an effective rate less than the state and federal minimum wage because: (1) employees were not paid for all hours of work, thus reducing their supposed effective hourly rate; and (2) Defendants did not comply with the aforementioned tip credit regulations as detailed herein.

more than twenty percent of their workweeks, engaging in work that is not performed by employees who are customarily and regularly tipped, for example, preparing the restaurant for opening, closing, and cleaning. *See generally Adonias v. Al Horno Lean Mexican Kitchen Inc.*, No. 16-CV-07266-LTS-KHP, 2018 WL 4007643, at *8 (S.D.N.Y. Aug. 22, 2018) ("The FLSA precludes employers from applying a tip credit to wages of tipped employees who spend a substantial amount of time, or more than twenty percent of their workweeks, engaged in related but non-tip-producing work must be paid the full minimum wage for the time spent performing the non-tipped work.").

7. At bottom, Defendants systematically violated federal and Connecticut state wage and hour laws by engaging in a pattern and practice of wage theft affecting class members. As a result of these violations, Defendants forfeited any right to claim tip credit under federal and state law and must pay all affected employees the full minimum wage for all hours worked, plus liquidated damages, misappropriated tips, interest, and attorneys' fees and costs.

## II. PARTIES

8. Plaintiff Natalie Desposati is an individual and resident of New Milford, Connecticut. With more than 20 years of experience in the restaurant industry, Plaintiff worked at Racanelli Restaurant Group from approximately August 2024 to November 2024 and from December 2024 to March 2025. She worked at Defendants' Spiga and Waveny locations and worked alongside current and former employees of Defendants who worked at those and other Racanelli Restaurant Group locations in Connecticut.

9. The FLSA putative Collective Members are all current and former employees of Defendants who worked as bartenders or servers, or both, at any of Defendants' restaurant locations and were paid a direct hourly wage of less than minimum wage (under state or federal law) during the three-year period preceding the filing of this lawsuit through the date notice is authorized by the Court.

10. The Connecticut putative Class Members are all current and former employees of Defendants who worked as bartenders or servers, or both, at any of Defendants' Connecticut

restaurant locations and were paid a direct hourly wage of less than minimum wage (under state or federal law) during the two-year period preceding the filing of this lawsuit.

11. Defendant Pine Hospitality, Inc. is a corporate entity organized under Connecticut law that does business in connection with the Racanelli Restaurant Group, and it is owned and/or controlled by Defendant Gennaro Racanelli and Defendant Alex Racanelli. Pine Hospitality is one corporate entity used to pay Plaintiff and other class members, and it qualifies as an employer within the meaning of the FLSA and Connecticut wage laws.

12. Spiga New Canaan Group, Inc. is an additional corporate entity organized under Connecticut law that does business in connection with the Racanelli Restaurant Group, and it is owned and/or controlled by Defendant Gennaro Racanelli and Defendant Alex Racanelli. Like Pine Hospitality, Spiga New Canaan Group, Inc. is another corporate entity used to pay Plaintiff and other class members, and it qualifies as an employer within the meaning of the FLSA and Connecticut wage laws.

13. Defendant Gennaro Racanelli is an individual who owns and controls Defendants' restaurant operations and has acted as an employer within the meaning of the FLSA and Connecticut wage laws. He is a resident of New York.

14. Defendant Alex Racanelli is an individual who serves as owner and accountant for Defendants' restaurant operations and has direct responsibility for payroll and wage payment decisions. He is a resident of New York.

15. At all relevant times, Defendants Gennaro and Alex Racanelli exercised operational control over significant aspects of the day-to-day functions of the restaurants, including payroll, tip policies, staffing decisions, and compensation practices, thereby qualifying as 'employers' under the FLSA and Connecticut wage laws.

## III. JURISDICTION AND VENUE

16. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims arising under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*

17. This Court has supplemental jurisdiction over the Connecticut state-law claims pursuant to 28 U.S.C. § 1367 because they arise from the same nucleus of operative facts as the federal claims.

18. This Court has personal jurisdiction over Defendants because they conduct substantial business in Connecticut, employ Connecticut residents, and the alleged violations occurred in Connecticut.

19. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants conduct business in this District and a substantial part of the events giving rise to the claims occurred in this District.

20. Venue is also proper under 28 U.S.C. § 1391(b)(1) because at least one Defendant resides in this District and under § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred within this District.

## IV. COVERAGE UNDER THE FLSA AND CONNECTICUT WAGE LAWS

21. At all relevant times, Defendants have been enterprises engaged in commerce or in the production of goods for commerce under Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

22. At all relevant times, Defendants have had annual gross revenues in excess of $500,000 and have employed individuals engaged in commerce or in the production of goods for commerce.

23. At all relevant times, Plaintiff and the collective and class members were employees of Defendants under the FLSA, 29 U.S.C. § 203(e), and Connecticut wage laws.

## V. FACTUAL ALLEGATIONS

### A. Defendants' Restaurant Operations

24. Defendants operate an extensive restaurant group with locations throughout Connecticut and New York, including fine dining establishments, casual dining restaurants, and bars.

25. On information and belief, within the past 3 years Defendants have employed hundreds of individuals to work as bartenders and servers at their various locations.

26. On information and belief, Defendants use a centralized payroll and accounting system overseen by Alex Racanelli, who serves as the accountant for the Racanelli Restaurant Group.

### B. Hours Shaving Violations

27. Defendants maintained a pattern and practice of "shaving" hours from employees' paychecks, consistently paying employees for fewer hours than they had actually worked.

28. This systematic hours manipulation resulted in substantial wage theft from employees who relied on accurate hour reporting for their livelihood.

29. For example, Defendants systematically prevented Plaintiff and other similarly situated workers from clocking in and out at accurate times and allowed Defendants and their managers to underreport hours based on an approximation of hours per their assigned shifts instead of the actual hours worked by class members such as Plaintiff.

30. This resulted in Plaintiff and similarly situated employees often having fewer hours reported on their paychecks than those they worked.

31. For example, it was common for class members to be required to help with opening and closing the restaurant without being paid fully for all such hours worked.

**C. Credit Card Tip Theft**

32. Defendants also systematically diverted credit card tips from employees by consistently paying less than the full amount of credit card tips earned.

33. The amounts paid to employees for credit card tips were often, if not always, lower than the actual tips received (and never higher), demonstrating the intentional nature of this systemic underpayment of tips.

34. When employees have questioned these discrepancies, co-owner and accountant Defendant Alex Racanelli deflected, denied, or ignored requests for rectification.

35. This systematic underpayment of tips extended to tip-outs between departments, where credit card tip-outs from servers to bartenders were reduced.

36. On information and belief, Defendants also reduced credit card tips by passing along ordinary business expenses to class members, such as credit card processing fees, before distributing tips to employees.

**D. Inaccurate Cash Tip Reporting**

37. Defendants engaged in systematic wage violations by inflating employees' cash tip declarations by approximately much more than the actual amounts earned.

38. For example, full-time servers and bartenders would have many hundreds of dollars in cash tips declared on their paychecks for a week when their total cash sales for that week were much lower, making it impossible to have earned the amount of cash tips being shown on their ADP paychecks.

39. On information and belief, Defendant Alex Racanelli was responsible for effectuating the pattern and practice of routinely allocating inaccurate cash tip declarations on employee payroll as part of Defendants' common scheme.

40. Employees, including Plaintiff and her former colleagues, were systemically denied the right to declare their own tips accurately, despite this being legally permitted.

41. This inaccurate reporting forced employees to have income tax liability on phantom income they never received, seemingly shifting Defendants' tax liability to their employees and exposing employees to potential penalties, interest, additional withheld income, and other wage reductions as a result of Defendants' scheme.

42. Together, the pattern and practices of inaccurately reporting cash tips and credit card tips demonstrates a pattern of failing to accurately and completely pay class members all tips, free and clear.

**E. Incorrect Hourly Pay Rate Violations**

43. Assuming full compliance with tip credit rules (which did not occur here), Connecticut law establishes different subminimum wage rates for different job classifications: as of January 2025, $8.23/hour for bartenders and $6.38/hour for servers.

44. Despite these legal requirements, Defendants systematically and often paid bartenders the lower server rate of $6.38/hour instead of the required $8.23/hour rate. Thus, even assuming compliance with tip credit regulations (which again did not occur), Defendants violated Connecticut law by frequently paying bartenders less than legally required.

45. For example, Plaintiff Desposati was improperly paid the server rate at various points during her employment despite her job title and duties being those of a bartender. This

issue was not limited to Plaintiff Desposati but was a widespread issue at Defendants' restaurants where other bartenders were commonly paid the server rate of $6.38.

46. This systematic misclassification resulted in significant underpayment of wages to similarly situated employees working for Defendants.

**F. Illegal Tip Pool Violations**

47. Defendants maintained an illegal tip pool by retaining tip-outs between departments in the management office and failing to distribute them fully, free from diversions or deductions, to lawful tip pool recipients.

48. By failing to fully distribute the tip pool only to lawful tip pool recipients, Defendants were keeping employees' tips, and thus Defendants effectively placed themselves in the tip pool despite not being "tipped employees", which violates federal and state tip credit requirements.

49. While the full and precise accounting of the diverted or deducted tips from the tip pool, and exactly where that money went, is a subject for discovery, Defendants have the burden to prove they operated a lawful tip pool.

50. This unlawful use or retention of employee tips violates federal and state law, resulting in Defendants' forfeiture of any purported right to claim a tip credit.

51. Similarly, Defendant did not allow Plaintiff and class members to retain all tips as required by Section 203(m) of the FLSA or Connecticut wage and hour laws prohibiting employees from having to pay for their jobs or submit to deductions from their wages or tips.

52. For instance, Defendants subjected Plaintiff and class members to an illegal policy that required employees to pay for their uniforms, tools, and other non-203(m) items. Plaintiff class members paid for their own uniforms, shirts, shoes, bar tools, and other similar

ordinary business expenses that should have been borne by Defendants but illegally reduced class members' wages and tips.

**G. Improper Non-Service Work Violations**

53. Connecticut law codifies the "80/20 rule" through Conn. Agency Reg. § 31-62-E3a, which provides that employers may not claim tip credit when service employees perform non-service duties for two hours or more, or for more than 20 percent of the service employee's shift, whichever is less.

54. Defendants routinely required tipped employees to perform extensive non-service duties including deep cleaning, equipment maintenance, food preparation, inventory management, and other tasks that exceeded the permitted thresholds.

55. Despite requiring employees to perform non-service work for more than the statutory limits, Defendants typically continued to pay the tipped minimum wage rather than the full minimum wage for all hours worked on such days.

56. These violations further invalidate Defendants' claimed tip credit and require payment of the full minimum wage for all hours worked.

57. Indeed, Conn. Agency Reg. § 31-62-E3 requires employers claiming tip credit to obtain substantial evidence, such as a daily, weekly, or bi-weekly attestation or statement in electronic or written format, demonstrating that service employees have received in gratuities not less than the amount claimed as credit for part of the minimum fair wage.

58. Defendants failed to maintain adequate records of tip amounts received by employees and otherwise failed to obtain the required substantial evidence of tip receipt as mandated by Connecticut regulations.

59. Defendants' inadequate recordkeeping practices further demonstrate their systematic disregard for wage and hour law compliance and forfeit their right to claim tip credit.

60. Each paycheck that failed to include the legally required minimum wage and all protected tips constituted a separate, recurring violation under the FLSA and CMWA, thereby giving rise to a new violation with every underpayment.

**H. Loss of Tip Credit**

61. Due to the multiple violations described above, Defendants have forfeited any right to claim a tip credit under federal and state law.

62. Defendants' retention of employee tips, failure to lawfully distribute all tips from the tip pools, requiring employees to pay or incur business expenses (including by inflating cash tips), improper assignment of non-service work, and failure to maintain adequate tip records all constitute violations that invalidate any tip credit claim.

63. Defendants are thus liable for the full minimum wage for all hours worked by affected employees, without any credit for tips received.

64. Conn. Agency Reg. § 31-60-2 further clarifies the application of these requirements for tip credit eligibility.

65. Defendants retaliated against employees, including, but not limited to, Plaintiff, who questioned their illegal wage practices by terminating them, constructively discharging them, or severely reducing their work hours. This conscious retaliation further demonstrates knowledge of the systemic issues and an illegal motive in engaging in the underlying conduct given their efforts to cover it up or dismiss or discourage complaints.

66. The temporal proximity between Plaintiff's complaints about unlawful wage practices and Defendants' decision to reduce her hours supports a causal connection sufficient to establish a prima facie case of retaliation under both federal and state law.

67. At least some such complaints were made directly to Defendant Alex Racanelli, including by Plaintiff.

68. This pattern of retaliation was designed to silence employees complaining about wage violations and to perpetuate Defendants' illegal practices (and is common evidence of Defendants' pattern of systemically engaging in wage violations targeted at its tipped employees).

## VI. COLLECTIVE ACTION ALLEGATIONS (FLSA CLAIMS)

69. Plaintiff brings this action as a collective action under 29 U.S.C. § 216(b) on behalf of all similarly situated employees.

70. The proposed FLSA Collective is defined as: All current and former employees of Defendants who worked as bartenders or servers, or both at any of Defendants' restaurant locations and were paid a subminimum hourly wage during the three-year period preceding the filing of this lawsuit through the date notice is authorized by the Court.

71. Plaintiff and the FLSA Collective members are similarly situated because they: a. Were all paid subminimum wages by Defendants; b. Were all subject to the same illegal tip pool arrangements; c. All had credit card tips systematically reduced by Defendants; d. Were all required to work uncompensated hours due to hours shaving; e. Were all subject to inaccurate tip reporting practices; and f. Were all affected by Defendants' systematic wage theft practices.

72. The claims arise from Defendants' common policies and systematic practices, orchestrated by a common accountant, Defendant Alex Racanelli, and managerial group, applied in a common manner across their restaurant operations.

## VII. CLASS ACTION ALLEGATIONS (CONNECTICUT STATE LAW CLAIMS)

73. Plaintiff brings the Connecticut state law claims as a class action under Federal Rule of Civil Procedure 23.

74. The proposed Connecticut Class is defined as: All current and former employees of Defendants who worked as bartenders or servers, or both, at any of Defendants' Connecticut restaurant locations and were paid a subminimum hourly wage during the two-year period preceding the filing of this lawsuit.[4]

75. The Connecticut Class satisfies all requirements of Rule 23: a. Numerosity: The class includes dozens of current and former employees, making joinder impracticable; b. Commonality: Common questions of law and fact exist regarding Defendants' wage practices; c. Typicality: Plaintiff's claims are typical of the class members' claims; d. Adequacy: Plaintiff will adequately represent the class interests. Plaintiff has no interests antagonistic to the proposed class and has retained counsel experienced in class and collective wage-and-hour litigation to vigorously prosecute this action on behalf of the class.

76. The class further meets the requirements of Conn. Gen. Stat. § 31-68(a)(3) with respect to the sidework they were required to perform. All class members (A) performed nonservice duties while employed by Defendants, for more than a de minimis amount of time,

---

[4] Plaintiff believes this class definition is appropriate based on the systemic and common nature of the violations impacting all class members. But Plaintiff reserves the right to modify the class or collective definitions or to seek subclasses when moving for collective and/or Rule 23 certification.

that were not incidental to service duties, including, but not limited to, deep cleaning, equipment maintenance, food preparation, and inventory management; and (B) were not properly compensated by Defendants for some portion of this nonservice work in accordance with Conn. Agencies Regs. § 31-62-E4. These uniform practices make Defendants liable to all proposed class members and present common questions of law and fact that predominate over individual issues.

77. Class certification is appropriate under Rule 23(b)(2) because Defendants acted on grounds generally applicable to the class, making declaratory and injunctive relief appropriate.

78. Class certification is also appropriate under Rule 23(b)(3) because common questions predominate and class treatment is superior to individual litigation.

## VIII. CAUSES OF ACTION

### COUNT I: VIOLATIONS OF THE FAIR LABOR STANDARDS ACT
*(Minimum Wage and Tip Credit Violations)*

79. Plaintiff incorporates all preceding allegations.

80. Defendants violated 29 U.S.C. § 206 by failing to pay Plaintiff and the FLSA Collective members the federal minimum wage.

81. Defendants paid class members wages less than the federal minimum wage and Defendants are not entitled to claim tip credit because they: a. Failed to allow employees to retain all tips; b. Maintained unlawful tip pools; c. Required employees to pay business expenses (including by overreporting cash tips and paying for uniforms and other business expenses); d. Systematically underpaid credit card tips from employees; e. Failed to maintain adequate records of tip amounts as required for tip credit eligibility.

82. Defendants' retention of employee tips and requiring employees to pay business expenses constitute unlawful kickbacks prohibited by 29 U.S.C. § 203(m).

83. Defendants' violations were willful and not based on good faith, warranting liquidated damages and a three-year statute of limitations.

**COUNT II: VIOLATIONS OF THE CONNECTICUT MINIMUM WAGE ACT**

84. Plaintiff incorporates all preceding allegations.

85. Defendants violated Conn. Gen. Stat. § 31-58, et seq., by: a. Paying incorrect tipped minimum wage rates based on job classification; b. Failing to pay the full Connecticut minimum wage when tip credit was forfeited; c. Systematic hours shaving and overtime violations; d. Violating the 80/20 rule codified in Conn. Agency Reg. § 31-62-E3a and § 31-60-2 by paying class members less than the minimum wage to perform non-service duties, including for excessive periods of time in excess of 20% of their time.

86. Plaintiff asserts a private right of action on behalf of herself and all similarly situated under Gen. Stat. §§ 31-60 and 31-68.

**COUNT III: VIOLATIONS OF THE CONNECTICUT WAGE PAYMENT AND COLLECTION LAW**

87. Plaintiff incorporates all preceding allegations.

88. Defendants violated Conn. Gen. Stat. § 31-71e by: a. Failing to pay all wages due; b. Making unauthorized deductions and diversions from wages, including, but not limited to, by inflating cash tips on employees resulting in increased withholdings and/or liabilities not permitted by law; and c. Forcing employees to pay for specific uniforms, shoes, tools, and other equipment to secure or continue employment.

89. Indeed, Defendants similarly violated § 31-71e and § 31-73(b) by requiring class members to pay for uniforms, shoes, tools, and other equipment they were required to pay for to

secure or continue their employment with Defendants. *See* §31-73(b) (employers may not "receive or exact any refund of wages, fee, sum of money or contribution from any person, or deduct any part of the wages agreed to be paid, upon the representation or the understanding that such refund of wages, fee, sum of money, contribution or deduction is necessary to secure employment or continue in employment.").

90. Plaintiff asserts a private right of action on behalf of herself and all similarly situated under Gen. Stat. §31-72 to collect diverted, deducted, or unpaid wages.

**COUNT IV: RETALIATION (INDIVIDUAL BASIS ONLY)**

91. Plaintiff incorporates all preceding allegations.

92. Defendants retaliated against employees who complained about wage violations in violation of 29 U.S.C. § 215(a)(3) and Connecticut law, Gen. Stat. §31-69b (enforced under §31-68) . Plaintiff had her hours reduced in response to her making protected complaints under state and federal law to Defendants. Because of this reduction in hours, she lost significant income.

93. Plaintiff seeks all remedies available under state and federal law including lost wages, liquidated damages, and attorneys' fees and costs.

## IX. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A. Certify this action as a collective action under 29 U.S.C. § 216(b) and authorize notice to potential collective members;

B. Certify this action as a class action under Federal Rule of Civil Procedure 23;

C. Enter judgment against Defendants for unpaid wages, overtime compensation, and liquidated damages;

D. Order relief, injunctive, equitable, or otherwise, requiring Defendants to issue corrected tax forms for all affected employees;

E. Order Defendants to pay all misappropriated tips with interest;

F. Award attorneys' fees and costs;

G. Enter injunctive relief requiring Defendants to comply with federal and state wage laws;

H. Issue a declaratory judgment that Defendants' policies and practices complained of herein are unlawful under the FLSA and Connecticut wage laws; and

I. Award any other relief that the Court deems just and proper.

November 12, 2025

Respectfully submitted,

By: */s/ Zachary L. Rubin*

Zachary L. Rubin, Esq. (ct30192)
**ZLR Litigation, PLLC**
680 E. Main Street, Suite A #638
Stamford, Connecticut 06901
(203) 212-9983
zach@zlrlitigation.com

Drew N. Hermann*
**Hermann Law, PLLC**
Burnett Plaza
801 Cherry Street, Suite 2365
Fort Worth, Texas 76102
(817) 479-9229
drew@herrmannlaw.com

Vishal H. Shah*
**SHAH LITIGATION, PLLC**
867 Boylston St., 5th Fl. #1893
Boston, Massachusetts 02116
(617) 334-5825
vishal@shahlitigation.com

* *pro hac vice* applications forthcoming

*Attorneys for Plaintiff and the Proposed Collective and Class*