UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

NATALIE DESPOSATI,
On behalf of herself and all others similarly
situated,

*Plaintiff*,

v.

PINE HOSPITALITY, INC., et al.,

*Defendants*.

Case No. 3:25-CV-01896 (KAD)

July 28, 2026

**MEMORANDUM OF DECISION**
**RE: DEFENDANTS' MOTION TO DISMISS (ECF NO. 29)**

Kari A. Dooley, United States District Judge:

Natalie Desposati ("Plaintiff") filed this putative class/collective action Complaint against her former employers, Pine Hospitality, Inc. d/b/a Racanelli Restaurant Group, Spiga New Canaan Group, Inc., Alex Racancelli, and Gennaro Racanelli (collectively, "Defendants"), alleging violations of the Fair Labor Standards Act, ("FLSA"), 29 U.S.C. § 201 *et seq.*; the Connecticut Minimum Wage Act, ("CMWA"), Conn. Gen. Stat. § 31-58 *et seq.*; the Connecticut Wage Payment and Collection Law ("CWPCL"), Conn. Gen. Stat. § 31-71a *et seq.*; and retaliation under both the FLSA and CMWA. *See* Compl., ECF No. 1. Defendants filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Mot. to Dismiss, ECF No. 29. Plaintiff opposes. *See* Pl.'s Opp'n, ECF No. 36. For the reasons set forth below, the Motion to Dismiss is **DENIED**.

**Allegations**

The following allegations are set forth in Plaintiff's Complaint and are deemed true for purposes of the instant motion. Plaintiff was employed by the Racanelli Restaurant Group from approximately August 2024 to November 2024, and again from December 2024 to March 2025. Compl., ECF No. 1 at ¶ 8. She worked as a bartender at Waveny Polo Bar and Grill ("Waveny") and Spiga, both located in New Canaan, Connecticut. *Id*. at ¶¶ 2, 45. Defendants operate a multi-state restaurant group with locations throughout Connecticut, including Lugano, Molto, Spiga. Waveny Polo Bar and Grill, Ecco, Zucca Gastrobar, and Zaza Italian Gastrobar, as well as Pizza and Brew in New York. *Id*. at ¶ 2. Plaintiff and other similarly situated employees (bartenders and servers) were paid by Pine Hospitality and Spiga New Canaan Group. *Id*. at ¶¶ 11–12. All three corporate defendants were "owned and/or controlled" by Alex and Gennaro Racancelli. *Id*. at ¶¶ 11–14. Alex Racanelli, as the owner and accountant of the Racanelli Restaurant Group, had direct control over "payroll and wage payment decisions." *Id*. at ¶¶ 14, 26.

Defendants consistently paid Plaintiff less than the minimum wage and less than what she actually earned. Defendants maintained a practice of "shaving" hours from employees' paychecks. *Id*. at ¶ 27. For example, Defendants prevented Plaintiff from clocking in and out at accurate times and allowed managers to "underreport hours based on an approximation of hours per their assigned shifts instead of the actual hours worked." *Id*. at ¶ 29.

Defendants diverted a portion of credit card tips insofar the amount of credit card tips paid to employees was lower than the actual amount of the tip. *Id*. at ¶¶ 32–33. On information and belief, Defendants also reduced the amount of credit card tips by passing along expenses such as credit card fees to the tipped employees. *Id*. at ¶32–36. Similarly, Defendants falsely inflated the amount of cash tips received and distributed to employees. *Id*. at ¶ 37.

2

Assuming compliance with tip credit requirements, Defendants paid Plaintiff and other bartenders $6.38 per hour, the Connecticut minimum rate for servers, instead of the required $8.23 per hour for bartenders.  *Id*. at ¶¶ 43–45.  Defendants also retained funds between management departments and failed to distribute them fully to tip pool recipients.  *Id*. at ¶¶ 47–51.  "Defendants effectively placed themselves in the tip pool despite not being 'tipped employees'".  *Id*. at ¶ 48.  Defendants further required tipped employees, including Plaintiff, to perform "deep cleaning, equipment maintenance, food preparation, inventory management," and other non-service duties for two hours or more, or for more than 20 percent of the service shift, but continued to pay employees the tipped minimum wage in violation of Connecticut's 80/20 Rule.  *Id*. at ¶¶ 53–55 (citing Conn. Agency Reg. § 31-62 E3a).  And they did not keep adequate records of tips received.  *Id*. at ¶ 58.

Plaintiff, among other employees, raised concerns with Defendant Alex Racanelli regarding these wage practices.  *Id*. at ¶¶ 34, 65–67.  But rather than addressing their employees' grievances, Defendants reduced employees' hours, including those of Plaintiff.  *Id*. at ¶¶ 65–68, 91–92.

**Procedural History**

Plaintiff filed the Complaint against Defendants on November 12, 2025.  *See generally* Compl., ECF No. 1.  As indicated, the Complaint sounds in four counts: minimum wage violations under the FLSA (count one); minimum wage violations under the CMWA (count two); improper wage withholding under the CWPCL (count three); and retaliation under both the FLSA and CMWA (count four).  *See id*. at ¶¶ 79–93.

On Counts One, Two, and Three, Plaintiff asserts a private right of action on behalf of herself and all similarly situated employees.  *Id*. at ¶¶ 80, 86, 90.  Specifically, she brings Count

One as a collective action under 29 U.S.C. § 216(b) and Counts Two and Three as class actions under Rule 23 of the Federal Rules of Civil Procedure.  Plaintiff asserts Count Four (retaliation) on behalf of herself only.  *Id*. at ¶¶ 91–93.  Plaintiff seeks lost wages and tips, interest, liquidated damages, attorneys' fees and costs, an injunction requiring Defendants to issue corrected tax forms to all affected employees, and other proper relief.  *Id*. at ¶¶ 7, 83, 93.

On January 29, 2026, Defendants filed a Motion to Dismiss[1] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See* Mot. to Dismiss, ECF No. 29.  On March 12, 2026, Plaintiff filed a memorandum in opposition to the Motion to Dismiss.  *See* Pl.'s Opp'n, ECF No. 36.  Defendants filed a reply brief on March 19, 2026.  *See* Defs.' Reply, ECF No. 37.

**Standard of Review**

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (quoting *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 557).  If a complaint only "pleads facts that are 'merely consistent with' a defendant's liability," it does not establish a plaintiff's plausible entitlement to relief.  *Id*. (quoting *Twombly*, 550 U.S. at 557).  Legal conclusions and "formulaic recitation[s] of

---

[1] Defendants' Motion to Dismiss is riddled with significant drafting errors.  *See*, *e.g.*, Mot. to Dismiss, ECF No. 29-1 at 12 ("Plaintiff has alleged anything to show that Plaintiff, and other 'similarly situated' employees actually worked for the Defendants what wages were with had and when suffered losses.")  More significantly, it misquotes Plaintiff's Complaint.  *See* ECF No. 29 at 6 ("Plaintiff states the allegations are only 'illustrative not acted'"); *id*. at 12 ("The Plaintiff's claim presented in her allegation that she 'was in a similar situation' to potential authors who chose to join is inconclusive and without any support.").  These purported quotations of Plaintiff's Complaint are without citation and do not appear in the Complaint.  *See* Pl.'s Opp'n, ECF No. 36 at 8 n.4; *see also* Compl., ECF No. 1.

the elements" are not entitled to a presumption of truth. *Id*. (quoting *Twombly*, 550 U.S. at 555). That said, determining whether a plausible claim has been pled is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679 (citation omitted). And when reviewing a motion to dismiss, the Court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the non-movant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010).

**Discussion**

Defendant moves to dismiss the Complaint under Rule 12(b)(6), (though the motion itself cites to Rule 12(b)(4)) arguing it "fails to state sufficient facts to support the legal conclusions and causes of action." Mot. to Dismiss, ECF No. 29-1 at 1; Fed. R. Civ. P. 12(b)(6). Although Plaintiff's factual allegations are decidedly sparce, they are not non-existent as posited by Defendants. For the reasons set forth below, the Court finds Plaintiff Complaint has facial plausibility. *See Iqbal*, 556 U.S. at 678.

### *Counts Three and Four*

As an initial matter, although Defendants' motion seeks dismissal of the entire Complaint, the motion and memorandum in support only discusses the minimum wage claims in Counts One and Two. *See* Mot. to Dismiss, ECF No. 29. There is no argument directly addressing Count Three and no mention of retaliation under Count Four at all. *See id*. Plaintiff raised this deficiency in her opposition brief, prompting Defendants to address dismissal of Counts Three and Four in their reply. *See* Pl.'s Opp'n, ECF No. 36 at 13–16; Reply, ECF No. 37 at 10–12. But the Court does not consider arguments raised for the first time in a reply brief. *Wang v. Omni Hotels Mgmt. Corp.*, 607 F. Supp. 3d 219, 229–30 (D. Conn. 2022) ("A party cannot raise an issue for the first time in a reply brief."); *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993) (same). Defendants did not

seek leave to supplement or amend the Motion to Dismiss, and in any event, a defendant may not "advance arguments that could have been made [but were not] in the first motion to dismiss." *Sears Petroleum & Transp. Corp. v. Ice Ban Am., Inc.*, 217 F.R.D. 305, 307 (N.D.N.Y. 2003) (citing *Keefe v. Derounian*, 6 F.R.D. 11, 13–14 (N.D. Ill. 1946); *Gilmore v. Shearson/Am. Express*, 811 F.2d 108, 112 (2d Cir.1987)).  Accordingly, the Motion to Dismiss as to Counts Three and Four is **DENIED** on this basis.

### *Counts One and Two — Minimum Wage Claims*

Under the FLSA, an employee is entitled to receive at least $7.25 per hour.  29 U.S.C. § 206(a)(1)(C).  To reach $7.25, an employer must pay a tipped employee at least $2.13 per hour as a minimum cash wage, with the $5.12 difference acting as a "tip credit."  29 U.S.C. § 203(m)(2)(A)(ii); *Chung v. New Silver Palace Rest., Inc.*, 246 F. Supp. 2d 220, 228 (S.D.N.Y. 2002).  If an employee earns less than $5.12 in tips per hour, then "the employer must make up the difference."  *Azeez v. Ramaiah*, No. 14 Civ. 5623 (PAE), 2015 WL 1637871, at *4 n.5 (S.D.N.Y. Apr. 9, 2015).  But an employer may not take advantage of a tip credit if it fails to inform the employee of the applicable statute or "retain[s] any portion of the employee's tips or distribute[s] them to non-tipped employees."  *Id*. at *4 (citing *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 240 (2d Cir. 2011); *Chung*, 246 F.Supp. 2d at 230); *see also* 29 U.S.C. § 203(m)(2)(A)(ii).  And if an employer loses its entitlement to the tip credit, then it must pay tipped employees the full hourly minimum wage.  *Shahriar*, 659 F.3d at 240; *Chung*, 246 F. Supp. 2d at 230.  The FLSA provides a private right of action under 29 U.S.C. § 216(b).  A plaintiff cannot state a claim for a minimum wage violation "unless [his] average hourly wage falls below the federal minimum wage."  *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 115 (2d Cir. 2013) (citations omitted).

Under Connecticut law, an employer must pay its employees a dollar amount greater than or equal to the state minimum wage, which adjusts with inflation every year. Conn. Gen. Stat. §§ 31-60(a), 31-58(i)(1). In 2024 and 2025, when Defendants employed Plaintiff, the minimum wage was $15.69 and $16.35 per hour, respectively. Conn. Dep't of Lab., Wage and Workplace Standards, https://portal.ct.gov/dol/divisions/wage-and-workplace-standards?language=en_US (last visited July 28, 2026); *see also Stewart v. Love Tender Care Home Care LLC*, No. 3:25-cv-00289 (MPS), 2026 WL 686428, at *6 (D. Conn. Mar. 11, 2026). Similar to the FLSA, employers may take a tip credit "in an amount equal to the difference between the minimum fair wage and the employer's share." Conn. Gen. Stat. § 31-60(d)(2). For bartenders, the "employer's share" or minimum cash wage is $8.23 per hour. *See* Conn. Gen. Stat. § 31-60(d)(3)(B); *Farias v. Rodriguez*, 355 A.3d 1116, 1122 (Conn. App. 2026). Thus, the maximum tip credit for bartenders was $7.46 in 2024 and $8.12 in 2025. *See* U.S. Dep't of Lab., Minimum Wage for Tipped Employees, https://www.dol.gov/agencies/whd/state/minimum-wage/tipped (last visited July 28, 2026).

An employer may take advantage of a tip credit only if (1) the employee engages in work that customarily and usually receives tips; (2) the employer regularly records the tips; and (3) the income that the employee actually receives from tips is greater than or equal to the amount recorded and claimed as a tip credit. *See* Conn. State Regs. §§ 31-62-E3, 31-60-2; *see also* Conn. Gen. Stat. § 31-60(b) (authorizing Labor Commissioner to adopt regulations in accordance with the statute). And if a service employee performs non-service duties "(1) [f]or two hours or more, or (2) [f]or more than 20 percent of the service employee's shift, whichever is less," then the employer must pay the full minimum wage for those non-service hours. Conn. State Regs.

§ 31-62-E3a.  Under Conn. Gen. Stat. § 31-68, an employee may privately enforce the minimum wage violation by bringing a civil action against their employer.

Defendants argue that the Complaint is wholly conclusory in terms of whether and how tips were recorded, calculated and paid such that Plaintiff's complaint fails to plead a viable wage violation under the FLSA or the CMWA.  Mot. to Dismiss, ECF No. 29-1 at 4.  The Court disagrees.

Plaintiff alleges that Defendants "commonly" paid her $6.38 per hour, which was below Connecticut's minimum cash wage for bartenders even assuming the applicability of the tip credit. *See* Compl., ECF No. 1 at ¶ 45; Conn. Gen. Stat. § 31-60(d)(3)(B).  A $6.38 hourly wage would establish a compensable violation of Connecticut law.  Similarly, $6.38 per hour is also below the federal minimum wage.  *See* 29 U.S.C. § 206(a)(1)(C).  Thus, Plaintiff has sufficiently pleaded that Defendants violated both the FLSA and CMWA *unless Defendants were entitled to a tip credit*. If Defendants are not entitled to a tip credit, Defendants are liable for the wages in the full amount of the applicable minimum wage.  *See Shahriar*, 659 F.3d at 240; *Chung*, 246 F. Supp. 2d at 229 ("The two prerequisites that the employer must fulfill to be eligible for the tip credit are strictly construed and must be satisfied even if the employee received tips at least equivalent to the minimum wage." (citation omitted)).

Similarly, Plaintiff alleges that she was not permitted to clock in and clock out in a manner that would have accurately recorded her hours worked, Compl., ECF No. 1 at ¶ 29; that she was paid based on how her shift was scheduled as opposed to the actual hours she worked, *id*.; and that her pay therefore did not include any pay for certain hours worked, *id*. at ¶ 30.  This too supports the inference of a minimum wage violation under both the FLSA and the CMWA.

Further, as Plaintiff correctly notes, "compliance with all requirements for taking a tip credit" is an affirmative defense.  *See* Compl., ECF No. 1 at ¶ 6; Pl.'s Opp'n, ECF No. 36 at 10–13.

8

Thus, Defendants will bear the burden of demonstrating tip credit compliance. *See Rodriguez v. Kaiaffa, LLC*, 253 A.3d 13, 38 (Conn. 2020) (citing *Stokes v. Norwich Taxi, LLC*, 958 A.2d 1195 (2008) (placing burden on employer to prove application of fluctuating workweek exception under FLSA); *Pedigo v. Austin Rumba, Inc.*, 722 F. Supp. 2d 714, 724 (W.D. Tex. 2010) ("[the] [d]efendants, as the employers, bear the burden of proving that they are entitled to taking tip credits" (internal quotation marks omitted)); *Driver v. AppleIllinois, LLC*, 265 F.R.D. 293, 298 (N.D. Ill. 2010) (same)). *But see Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 882 (8th Cir. 2011) ("the employees . . . must establish that they spent a substantial amount of time performing nontip-producing duties such that they were not performing a tipped occupation for at least portions of their shifts" (emphasis added)), cert. denied, 565 U.S. 1156 (2012)).  Regardless, Plaintiff also plausibly alleges that Defendants were not entitled to a tip credit.

In this vein, Plaintiff alleges that Defendants, though they did not directly receive tips from customers, improperly retained funds from the tip pool. Compl., ECF No. 1 at ¶ 51. Such conduct would violate federal law and disqualify Defendants from taking a tip credit. *See* 29 U.S.C. §§ 203(m)(2), 216(b). Plaintiff also alleges that Defendants failed to maintain accurate records of tips, Compl., ECF No. 1 at ¶ 58, which would prevent Defendants from taking a tip credit. *See* Conn. State Regs. §§ 31-60-2, 31-62-E3; *Fuk Lin Pau v. Jian Le Chen*, No. 3:14-cv-841 (JBA), 2015 WL 6386508, at *1 (D. Conn. Oct. 21, 2015) ("The CMWA does not permit a tip credit where employers do not record such tips 'on a weekly basis as a separate item in the wage record.'" (internal citation omitted)).

Plaintiff also alleges that Defendants routinely required tipped employees to perform "deep cleaning, equipment maintenance, food preparation, inventory management," and other non-service duties for two hours or more, or for more than 20 percent of the service shift, but continued

9

to pay employees a reduced, tipped minimum wage.  Compl., ECF No. 1 at ¶¶ 53–55.  This conduct also implicates Defendants' eligibility for taking a tip credit and Plaintiff's minimum wage claims. *See*, *e.g.*, Conn. State Regs. § 31-62-E3a.  Although this claim lacks numbers beyond those copied from the CMWA, it achieves plausibility through qualitative details, such as a list of the specific non-service duties that Plaintiff "routinely" performed.  *Compare Brown v. Hearst Corp.*, No. 3:14-cv-1220 (VAB), 2015 WL 5010551, at *3 (D. Conn. Aug. 24, 2015) ("Brown provided sufficient factual content to nudge her claim from conceivable to plausible. . . . Brown does not allege the approximate number of uncompensated overtime hours or provide a log of all hours worked, but she is not required to do so.") *with Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 89 (2d Cir. 2013) ("Dejesus's complaint tracked the statutory language of the FLSA, lifting its numbers and rehashing its formulation, but alleging no particular facts sufficient to raise a plausible inference of an FLSA overtime violation.").

Defendants rely heavily on the fact that Plaintiff does not estimate the extent to which she was underpaid or identify the dates on which the alleged violations occurred, which Defendants assert is "fatal" to her claim.  *See* Reply, ECF No. 37 at 4–5, citing a trilogy of Second Circuit cases that considered the specificity required to state a plausible wage and hour claim under the FLSA: *Lundy*, 711 F.3d 106; *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192 (2d Cir. 2013); and *Dejesus*, 726 F.3d 85.[2]  And while Plaintiff is presumably in a position to

---

[2] *Lundy, Nakahata and Dejesus* involved claims for unpaid *overtime* under the FLSA and New York wage laws.  In each case, Plaintiff had failed to allege any particular week during which she worked in excess of 40 hours, so as to even trigger FLSA obligations.  Each only alleged that they worked overtime without the requisite compensation.  This is, in the Court's view, a distinction with a difference.  Failing to pay overtime is qualitatively different from the types of practices alleged here which implicate *minimum wage* obligations as well as the availability of a tip credit.

provide at least some of this information,[3] it is not essential that she do so in the Complaint.[4]  These cases do not impose a bright-line rule requiring plaintiffs to provide dollar amounts and dates. *Dejesus*, 726 F.3d at 90 (noting that "mathematical precision" is not required).  An approximation of hours and dollar amounts "'may help draw a plaintiff's claim closer to plausibility,'" "a complaint need not even 'set forth the approximate number of unpaid regular and overtime hours allegedly worked.'"  *Herrera v. Comme des Garçons, Ltd.*, 84 F.4th 110, 115 (2d Cir. 2023) (quoting *Nakahata*, 726 F.3d at 201 n.10).

A complaint does not have to include the precise dates and times that violations occurred if it alleges "systematic[]" or "regular" misconduct over the course of the plaintiff's employment. *See Kuck v. Planet Home Lending, LLC*, 354 F. Supp. 3d 162, 170 (E.D.N.Y. 2018) (reasoning that a requirement of strict temporal specificity would prevent plaintiffs from pursuing meritorious FLSA claims, which the Second Circuit could not have intended when deciding *Lundy*, *Nakahata*, and *Dejesus*); *Brown*, 2015 WL 5010551, at *3 (holding allegations of "consistent[] and regular[]" violations plausible because, although complaint did not approximate hours worked, it included employment positions, dates of employment, and specific conduct of supervisors (internal quotation marks omitted)).  So too here.  The Complaint specifies the timeframe of Plaintiff's employment, her job title, the two locations where she worked, who she worked for, time-keeping

---

[3] For example, Plaintiff alleges that her paystub falsely inflated the amount of cash tips she received during a pay period.  Compl., ECF No. 1 at ¶¶ 37–42.  Plaintiff is in the best position to know whether her cash tips during a pay period were below the amount that appeared on her paystub.  While greater specificity, to include when and how often this occurred, would have been preferable, given Plaintiff's presumed personal knowledge, the factual allegation supports Plaintiff's causes of action.  *See generally Twombly*, 550 U.S. at 545.

[4] It is unclear why Plaintiff elected to contest the Motion to Dismiss rather than amend the Complaint to add additional facts regarding her own alleged pay irregularities.  *See, e.g.*, *Dejesus*, 726 F.3d at 90 ("In reaching this conclusion, we would be less than candid if we did not register our concern about the failure of the plaintiff, through counsel, at least to attempt to amend her complaint to add specifics while the district court kept the door open for her to do so.  We would like to believe that the decision not to amend was made for some reason that benefitted Dejesus, rather than as an effort on counsel's part to obtain a judicial blessing for plaintiffs' counsel in these cases to employ this sort of bare-bones complaint." (footnote omitted)).

11

practices (i.e., how and when to clock in and out), and other factual details. *See generally* Compl., ECF No. 1. Similarly to *Kuck* and *Brown*, the Complaint alleges that certain violations consistently and regularly occurred throughout Plaintiff's employment. *See id*. at ¶¶ 27–64.

Although some of the allegations are admittedly sparse or arguably conclusory, the Court nonetheless finds that Plaintiff has met her burden of demonstrating facial plausibility. *See Iqbal*, 556 U.S. at 678.[5]

**Conclusion**

For the foregoing reasons, Defendants' Motion to Dismiss, ECF No. 29 is **DENIED**.

**SO ORDERED** at Bridgeport, Connecticut, this 28th day of July 2026.

 */s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE

---

[5] Defendants also challenge the sufficiency of the class and collective action allegations. The Court declines to address these arguments in the context of the Motion to Dismiss and shall take up these issues when deciding the presently pending Motion for Conditional Certification of the Collective action, ECF No. 28.